UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN HARRINGTON,

        Plaintiff,

    v.

ANDREW SAUL,

        Defendant.

Case No.  20-cv-04148-PJH

**ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 20, 21

Pursuant to 42 U.S.C. § 405(g), plaintiff Steven Harrington ("plaintiff") seeks judicial review of the Commissioner of Social Security's ("defendant") final decision denying his claims for disability benefits.  This action is before the court on the parties' motions for summary judgment.  Having considered the parties' motions, the pertinent legal authorities, and having reviewed the administrative record, the court hereby REMANDS this action to defendant's assigned administrative law judge for further proceedings in accordance with this order.

## BACKGROUND

### I.    Factual History

According to his work history report, plaintiff was a labor consultant from May 1993 to May 2014.  Administrative Record (Dkt. 17-7) at 24.  Also from his report, plaintiff was self-employed at an auction house from June 2014 to January 2017.  Id.  Plaintiff further reported he was a security guard for the month of October 2017, and a delivery person for a catering company from October 2017 to November 2017.  Id.

United States District Court
Northern District of California

1    According to Stanford ValleyCare records, plaintiff was hospitalized for chest pain

2  in July 2017.  Dkt. 17-8 at 2.  According to Axis Community Health records, plaintiff

3  started experiencing chronic lower back pain shortly thereafter.  Id. at 70.  Plaintiff then

4  received an MRI and was diagnosed with moderate lumbar spondylosis and multiple

5  levels of disc bulges with facet arthropathy that caused lateral recess narrowing and

6  neural foraminal stenosis from L2 through S1.  Id. at 46.

7    According to Mission Peak Orthopedics records, plaintiff was taken off of work by

8  a physician's assistant on October 31, 2017.  Id. at 60.  Also in the records, plaintiff

9  received an epidural steroid injection in November 2017, and reported an improvement in

10 his left foot.  Id. at 47.  On December 15, 2017, plaintiff received bilateral L4-5 and L5-S1

11 facet joint injections.  Id.  On January 3, 2018, plaintiff reported a 50 percent

12 improvement in his right lower back pain as a result of the injections.  Id.  On January 20,

13 2018, plaintiff applied for disability benefits.

14    On October 18, 2018, plaintiff reported to his physician's assistant that he still had

15 pain in his lower back and that the pain worsened when he sat or stood for prolonged

16 periods of time.  Id. at 88.  Plaintiff also reported he failed to practice physical therapy but

17 stated he had been doing other exercises at home.  Id. at 89.  In a Mission Peak

18 Orthopedics report, a physician's assistant stated plaintiff had "moderate restriction in

19 lumbar flex," "severe restriction in lumbar extension," "moderate pain on lumbar facet-

20 loading bilaterally," "moderate tenderness on palpation of the lower lumbar spine at L4 to

21 sacrum," and "mild to moderate pain to palpation of the left lumbar paraspinal and gluteal

22 musculature."  Id.  The physician's assistant also stated that plaintiff did not have pain

23 with "internal and external rotation of the bilateral hips" and that plaintiff had a normal

24 gait.  Id.  Finally, the physician's assistant reported that he did not feel plaintiff "would be

25 able to work" because plaintiff "cannot sit or stand for more than 30 minutes."  Id. at 90.

26    On November 7, 2018, plaintiff reported to a physician's assistant at Mission Peak

27 Orthopedics that he could not lift more than ten pounds, he could stand and/or walk less

28 than two hours in an eight-hour day, and he could sit less than six hours in an eight-hour

1   day. Id. at 93.  The assistant reported that plaintiff had "chronic pain" that was supported

2   by plaintiff's statements and medical records.  Id.

3          On May 24, 2019, plaintiff attended a hearing with an ALJ regarding his application

4   for disability benefits. Dkt. 17-3 at 28.  Regarding his physical limitations, plaintiff testified

5   he could sit for "20, 30, 40 minutes," but that he would need to recline for an hour in order

6   to return to work.  Id. at 36.  Plaintiff testified he could not return to his former job as a

7   labor consultant because the work required "a lot of desk time and a tremendous amount

8   of travel throughout the country, which required a tremendous amount of sitting time on

9   an airplane, in cars, [and] in meetings with clients."  Id. at 35.  Regarding his employment

10  as a labor consultant, plaintiff testified that he "became a project manager rather than a

11  labor consultant" because he would bring workers to the field for months at a time and

12  would help them whenever there was a need.  Id. at 35, 53.

13  **II.    Procedural History**

14          On January 28, 2018, plaintiff filed a Title II application for disability benefits,

15  alleging his disability began on December 30, 2016.  Id. at 16.  Plaintiff's claim was

16  denied on April 5, 2018.  Id.  Plaintiff filed a written request for a hearing on June 12,

17  2018, and amended his disability start date to July 27, 2017.  Id.  On May 24, 2019,

18  plaintiff appeared and testified at an ALJ hearing held in Oakland, California.  Id. at 28.

19  On August 19, 2019, the ALJ denied plaintiff's application.  Id. at 13–27.  On May 29,

20  2020, the Appeals Council denied review of plaintiff's application.  Id. at 2–7.  On June

21  23, 2020, plaintiff filed a complaint before this court seeking a review of the denial of his

22  benefits. Dkt. 1.  Plaintiff moved for summary judgment on April 12, 2021.  Dkt. 20.

23  Defendant filed a cross-motion for summary judgment on May 10, 2021.  Dkt. 21.

24                              **STATUTORY AND REGULATORY FRAMEWORK**

25          The Social Security Act ("SSA") provides for the payment of disability insurance

26  benefits and supplemental security income to people who suffer from a qualifying

27  physical or mental disability.  42 U.S.C. §§ 423(a)(1), 1382.  To evaluate whether a

28  claimant is disabled within the meaning of the SSA, the ALJ is required to use a five-step

United States District Court
Northern District of California

3

1    sequential analysis.  See 20 C.F.R. § 416.920(a).  The ALJ may terminate the analysis at

2    any step if she determines that the claimant is or is not disabled.  See Pitzer v. Sullivan,

3    908 F.2d 502, 504 (9th Cir. 1990).

4        At step one, the ALJ determines whether the claimant has engaged in any

5    "substantial gainful activity," which would automatically preclude the claimant from

6    receiving disability benefits.  20 C.F.R. § 416.920(b).  If the claimant has not engaged in

7    substantial gainful activity for a continuous 12-month period, then the ALJ proceeds to

8    step two.

9        At step two, the ALJ considers whether the claimant suffers from a severe

10   impairment which "significantly limits [his] physical or mental ability to do basic work

11   activities."  20 C.F.R. § 416.920(c).  If the claimant does not suffer from a severe

12   impairment, he is not disabled.  If, however, he does have a severe impairment, the ALJ

13   proceeds to step three.

14       At step three, the ALJ is required to compare the claimant's impairment(s) to a

15   listing of impairments provided in an appendix to the regulations.  See 20 C.F.R §§

16   416.920(a)(4)(iii), (d).  If the claimant's impairment or combination of impairments meets

17   or equals the severity of any medical condition contained in the listing, the claimant is

18   presumed disabled and should be awarded benefits.  See 20 C.F.R. § 416.920(d).  If not,

19   the ALJ goes to step four.

20       At step four, the ALJ considers whether the claimant has sufficient residual

21   functional capacity ("RFC") to perform his past work despite the limitations caused by the

22   impairments.  See 20 C.F.R. §§ 416.920(e)-(f).  An individual's RFC is what he can still

23   do in a workplace setting despite his physical and mental limitations.  See 20 C.F.R. §

24   416.945.  In determining the RFC, the ALJ must consider all of the claimant's

25   impairments, including those that are not severe, taking into account all relevant medical

26   and other evidence.  See 20 C.F.R. §§ 416.920(e), 416.945.

27       At step five, if the claimant cannot perform his past work, the ALJ is required to

28   determine whether the claimant can perform other work that exists in significant numbers

1   in the national economy, taking into consideration the claimant's RFC, age, education,

2   and work experience.  See 20 C.F.R. § 416.920(g).

3        At steps one through four, the claimant has the burden to demonstrate a severe

4   impairment and an inability to engage in his previous occupation.  See Andrews v.

5   Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995).  If the analysis proceeds at step five, the

6   burden shifts to the Commissioner to demonstrate that the claimant can perform other

7   work.  See id.  The Commissioner must "identify specific jobs existing in substantial

8   numbers in the national economy that the claimant can perform despite [his] identified

9   limitations."  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (internal quotation

10  marks omitted).  If the Commissioner is able to identify those specific jobs, then the

11  claimant is not disabled; otherwise, the claimant is disabled.  See 20 C.F.R. §

12  404.920(g)(1).

13       Throughout the process, the ALJ "has an independent duty to fully and fairly

14  develop the record and to assure that the claimant's interests are considered."

15  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks

16  omitted).  An ALJ's paraphrasing of record material must be accurate.  See Reddick v.

17  Chater, 157 F.3d 715, 722–23 (9th Cir. 1998).  Although the ALJ can and must weigh

18  conflicting evidence, she "cannot reach a conclusion first, and then attempt to justify it by

19  ignoring competent evidence in the record that suggests an opposite result."  Gallant v.

20  Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).

21                         **ALJ'S FINDINGS**

22       The ALJ considered whether plaintiff was disabled under §§ 216(i) and 223(d) of

23  the SSA.  Dkt. 17-3 at 16.  The ALJ concluded that, after weighing the evidence, plaintiff

24  had not been disabled within the meaning of the SSA from July 27, 2017 to the date of

25  the decision.  Id.  The ALJ came to her conclusion by conducting a five-step sequential

26  analysis.

27       At step one, the ALJ found that plaintiff had "not engaged in substantial gainful

28  activity since July 27, 2017, the amended alleged onset date."  Id. at 18.  The ALJ cited

United States District Court
Northern District of California

United States District Court
Northern District of California

1    plaintiff's certified earnings record as support for this finding.  Id.  The ALJ thus

2    proceeded to step two.

3    At step two, the ALJ found that plaintiff had the following "severe impairments":

4    "moderate lumbar spondylosis, nerve impingement, degenerative disc disease with

5    multiple level disc bulges, spondylosis with radiculopathy, and intervertebral disc

6    disorders with radiculopathy."  Id.  The ALJ found these "medically determinable

7    impairments significantly limit[ed] [plaintiff's] ability to perform basic work activities as

8    required by SSR 85-28."  Id.  In other words, the ALJ found plaintiff's impairments

9    "severe" and proceeded to step three.

10    At step three, the ALJ found that there was "no opinion or other evidence" that

11    plaintiff's "impairments met or equaled a [listed impairment] prior to the date last insured."

12    Id. at 19.  The ALJ noted the "State Agency medical consultants determined that the

13    claimant's condition did not meet and was not equivalent to any condition listed in

14    Appendix 1."  Id.  The ALJ further noted the State Agency medical consultants and an

15    independent medical expert "provided opinions that [plaintiff's impairments] [were] not

16    consistent with a finding of a listing-level impairment."  Id.  And the ALJ did not credit

17    plaintiff's medical evidence that supported his "impairments [were] so profound as to be

18    listing level in severity."  Id.  The ALJ concluded that, after having "given special

19    consideration to listings relative to musculoskeletal impairments," she did "not find the

20    presence of any criteria set forth in said listings to warrant a finding that the claimant's

21    impairments meet or equal any listing during the adjudicated period."  Id.  Thus, the ALJ

22    proceeded to step four.

23    At step four, the ALJ determined plaintiff's RFC.  She concluded that plaintiff had

24    the RFC to "perform light work as defined in 20 CFR 404.1567(b) except he can stand or

25    walk 30 minutes at a time for a total of 6 hours, and sit 45 minutes at a time for a total of

26    6 hours in an 8-hour workday."  Id.  The ALJ specified that plaintiff "would need to be able

27    to alternate positions after each of these activities."  Id.  The ALJ also concluded that

28    plaintiff "can frequently climb ramps, stairs, ladders, ropes or scaffolds" and "can

6

frequently stoop, crouch or crawl."  Id.

The ALJ explained the two-step process she was required to administer in determining plaintiff's RFC.  Id.  First, she noted an ALJ must find there is an "underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms."  Id.  Second, she noted that an ALJ must evaluate the "intensity, persistence, and limiting effects" of plaintiff's symptoms to determine plaintiff's functional limitations.  Id. at 20.  The ALJ explained that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must consider other evidence in the record to determine if the [plaintiff's] symptoms limit [his] ability to do work-related activities."  Id.

At step one of the RFC determination, the ALJ concluded plaintiff had medically determinable impairments that could reasonably be expected to cause his alleged symptoms.  Id.  But at step two, the ALJ discounted plaintiff's testimony regarding the intensity of his symptoms.  Id.  The ALJ noted plaintiff's medical records showed plaintiff had a history for symptoms associated with "moderate lumbar spondylosis, nerve impingement, degenerative disc disease with multiple level disc bulges, and spondylosis with radiculopathy and intervertebral disc disorders with radiculopathy."  Id.  Yet the ALJ concluded the "evidence support[ed] the residual functional capacity assessment reached."  Id.  The ALJ cited the following evidence for her findings:

- The ALJ found the record supported plaintiff had "some limitations to lifting, carrying, and postural activities."  Id.  The ALJ explained the objective findings showed plaintiff was likely to have "some pain and limitations, but not to the extent alleged."  Id.  The ALJ noted there was "no objective evidence of severe stenosis or nerve root impingement," and radiology reports of plaintiff's lumbar spine from October 2017 found "moderate lumbar spondylosis, multiple levels of disc bulge with facet arthropathy causing lateral recess narrowing and neural foraminal stenosis from L2 through S1."  Id.

- The ALJ found the clinical evidence supported that plaintiff was "capable of light exertional work."  Id.  The ALJ cited that plaintiff reported "50% improvement" in

United States District Court
Northern District of California

his lower back pain following his "bilateral L4-5 and L5-SI facet joint injections" and that plaintiff did not take prescription pain medicine.  Id.

- The ALJ found the evidence supported (1) plaintiff "could stand or walk 30 minutes at a time for a total of 6 hours, [] sit 45 minutes at a time for a total of 6 hours in an 8-hour workday;" (2) plaintiff could perform light exertional work, as well as frequently climb ramps, stairs, rope, or scaffolds; and (3) plaintiff could frequently stoop, crouch, or crawl.  Id. at 21.  The ALJ cited plaintiff's "[e]xamination of the lumbar spine" that showed "severe pain on lumbar facet loading bilaterally" but did not show "restriction[s] in lumbar facet loading bilaterally."  Id.  The ALJ noted "there was moderate tenderness on palpation of the lower lumbar spine at L4 to the sacrum, mild to moderate pain to palpation of the left lumbar paraspinal and gluteal musculature, no pain with internal and external rotation of the bilateral hips, straight leg raise was negative bilaterally, strength in the bilateral lower extremities was 5/5 diffusely, and [plaintiff] ambulated with normal gait."  Id.

- The ALJ found the evidence supported plaintiff "could stand or walk 30 minutes at a time for a total of 6 hours, and sit 45 minutes at a time for a total of 6 hours in an 8-hour workday."  Id.  The ALJ cited (1) plaintiff's doctor's note that stated plaintiff's "left foot improved with the left L4-5 interlaminar epidural steroid injection;" and (2) plaintiff's appearance at the administrative hearing because plaintiff was able to move well and was able to sit through a 46-minute examination.  Id.

- The ALJ highlighted that plaintiff "did not participate in physical therapy as of October 2018," and "denied ablation or fusions and use[d] only over the counter medications."  Id.

The ALJ then discussed the weight she gave to medical sources.  Id. at 21.  The ALJ stated she would not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including medical sources from plaintiff.  Id.  The ALJ stated she fully considered the following medical opinions and prior administrative findings:

- State physicians A. Cepeda, M.D., and Scott Spoor, M.D., who opined that plaintiff could lift/carry up to 50 pounds occasionally, 25 pounds frequently, climb ramps, stairs, ladders, ropes and scaffolds frequently, and stoop, crouch and crawl frequently.  Id.  The ALJ found this evidence partially persuasive "as it [was] not fully consistent with the evidence as a whole."  Id.  The ALJ noted that the state physicians did not have plaintiff's testimony or his "most recent medical evidence of gradual worsening with injections" which supported a light RFC capacity assessment.  Id.  The ALJ noted that plaintiff was revaluated on January 3, 2018

and reported a 50 percent improvement in his right low back pain following the bilateral L4-5 and L5-SI facet joint injections on December 15, 2017. Id. at 22. The ALJ noted plaintiff "reported he had not been taking any pain medications and "denied any new complaints." Id. The ALJ stated that although the state physicians were not privy to plaintiff's records indicating "worsening that limits the exertional level, the records also show improvement supporting an ability to perform light exertional work." Id.

- A physician assistant signed form from Mission Peak Orthopedics dated November 7, 2018, concluded that "plaintiff could perform sedentary work carrying and lifting less than 10 pounds, sit less than 6 hours in an 8-hour workday, limitations in upper and lower extremities reaching in all directions, occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, occasionally balance, and never stoop, kneel, crouch and crawl." Id. The ALJ found the opinion to be unpersuasive because it was not consistent with the totality of the evidence. Id. The ALJ noted that the form seemed to have been filled out by plaintiff and "signed by the physician assistant with no explanation and without supportive medical evidence." Id. The ALJ considered plaintiff's subjective complaints but did not find "the supportability and consistency required by the objective evidence and clinical findings, which in totality supports the finding that [plaintiff] could perform light exertional work." Id.

At step four, the ALJ concluded that plaintiff was capable of performing his past relevant work as a labor consultant. Id. The ALJ relied on the testimony from the vocational expert ("VE"), Gloria Lasoff. Id. at 47. The ALJ posed a hypothetical of an individual who had functional limitations to the VE and asked the VE whether such an individual could perform the job of a "labor consultant." Id. at 48. The hypothetical was as follows: an individual of plaintiff's age, education, work experience who is able to work at the light exertion level, who can lift or carry 50 pounds occasionally and 25 pounds frequently, who can stand or walk up to one hour at a time for a total of six hours in a workday, and who would need to alternate positions after sitting or standing. Id. at 48–49.

The VE cited the Dictionary of Occupational Titles ("DOT") code for a "Human Resources Advisor" job description yet testified the code and job description were for a "consultant." Id. at 48. The DOT description for a "Human Resource Advisor" is as follows:

Provides establishment personnel assistance in identifying, evaluating, and resolving human relations and work performance problems within establishment to facilitate communication and improve employee human relations skills and work performance: Talks informally with establishment personnel and attends meetings of managers, supervisors, and work units to facilitate effective interpersonal communication among participants and to ascertain human relations and work related problems that adversely affect employee morale and establishment productivity.  Evaluates human relations and work related problems and meets with supervisors and managers to determine effective remediation techniques, such as job skill training or personal intervention, to resolve human relations issues among personnel.  Develops and conducts training to instruct establishment managers, supervisors, and workers in human relation skills, such as supervisory skills, conflict resolution skills, interpersonal communication skills, and effective group interaction skills.  Schedules individuals for technical job-related skills training to improve individual work performance.  May participate in resolving labor relations issues.  May assist in screening applicants for establishment training programs.  May write employee newsletter.  May operate audio-visual equipment to review or to present audio-visual tapes for training program.

Dkt. 20 at 19–20.  The VE concluded that an individual with the limitations in the hypothetical posed by the ALJ could perform the job of a "consultant."  Dkt. 17-3 at 49.

The VE entertained the idea that plaintiff's prior position was a "composite job" because plaintiff testified he worked with employees on job sites and acted as a supervisor.  Id. at 54.  After further examination, the VE decided plaintiff's prior employment was not a composite job because plaintiff did not spend enough time (at least 50 percent) doing non-consulting tasks.  Id. at 57.

## DISCUSSION

Plaintiff moves for summary judgment, reversal of the Commissioner's final decision, and/or remand of this case in accordance with 42 U.S.C. § 405(g).  Dkt. 20 at 1.  Plaintiff argues the ALJ failed to provide clear and convincing reasons for discrediting his testimony about the severity and frequency of his symptoms, and plaintiff argues the ALJ erred at step four of the sequential evaluation process when she found he could perform past work without considering whether his prior work as a "consultant" qualified as a composite job.  Id. at 12–13.

Defendant cross moves for summary judgment, arguing the ALJ's decision is free

1    of reversible error and supported by substantial evidence.  Dkt. 21 at 2.

2    **A.     Standard of Review**

3         A court has jurisdiction to review final decisions of the Commissioner pursuant to

4    42 U.S.C. § 405(g).  "An ALJ's disability determination should be upheld unless it

5    contains legal error or is not supported by substantial evidence."  <u>Garrison v. Colvin</u>, 759

6    F.3d 995, 1009 (9th Cir. 2014) (internal citation omitted).  "Substantial evidence means

7    more than a mere scintilla, but less than a preponderance; it is such relevant evidence as

8    a reasonable person might accept as adequate to support a conclusion."  <u>Lingenfelter v.</u>

9    <u>Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation

10   omitted).

11        "In determining whether the Commissioner's findings are supported by substantial

12   evidence," a district court must review the administrative record as a whole, considering

13   "both the evidence that supports and the evidence that detracts from the Commissioner's

14   conclusion."  <u>Reddick</u>, 157 F.3d at 720.  The Commissioner's conclusion is upheld where

15   evidence is susceptible to more than one rational interpretation.  <u>See</u> <u>Burch v. Barnhart</u>,

16   400 F.3d 676, 679 (9th Cir. 2005).

17        The court may not reverse an ALJ's decision on account of an error that is

18   harmless.  <u>See</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012).  The "burden of

19   showing that an error is harmful normally falls upon the party attacking the agency's

20   determination."  <u>Id.</u> (internal quotation marks omitted).

21   **B.     Analysis**

22        First, the court needs to address whether the ALJ properly discredited plaintiff's

23   subjective pain testimony with clear and convincing reasons.  When an ALJ has found

24   "objective medical evidence of an underlying impairment which could reasonably be

25   expected to produce the pain or other symptoms alleged," and there is no evidence of

26   malingering, "the ALJ may reject a claimant's subjective testimony regarding her

27   symptoms only by offering specific, clear and convincing reasons for doing so."  <u>Porteous</u>

28   <u>v. Saul</u>, 852 F. App'x 268, 270 (9th Cir. 2021) (internal quotation marks omitted).  Where

United States District Court
Northern District of California

the "underlying impairment could cause the pain reported, an absence of supporting medical evidence regarding the level of pain experienced, on its own, cannot form the sole basis for discounting pain testimony . . . some other evidence is called for to support a lack of credibility finding." Porteous, 852 F. App'x at 270 (internal quotation marks and citation omitted).

Here, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause" plaintiff's alleged symptoms.  Dkt. 17-3 at 20. Specifically, the ALJ found the following severe impairments: moderate lumbar spondylosis, nerve impingement, degenerative disc disease with multiple level disc bulges, spondylosis with radiculopathy, and intervertebral disc disorders with radiculopathy.  Id.  The ALJ did not find evidence of malingering.  Accordingly, the ALJ was required to accept plaintiff's severity testimony unless she had clear and convincing reasons for discrediting it.

But the ALJ's reasons for discrediting plaintiff's testimony do not meet the "clear and convincing" standard.  First, the ALJ discredited plaintiff's testimony because plaintiff reported a "50% improvement in his right low[er] back pain" following facet joint injections.  But plaintiff's reported improvement is not inconsistent with plaintiff's testimony that he felt pain when sitting down or standing for extended periods of time. See, e.g., Laborin v. Berryhill, 692 F. App'x 959, 961 (9th Cir. 2017) (noting the ALJ lacked clear and convincing reasons for discrediting plaintiff's pain testimony despite some evidence that plaintiff received partial relief from an epidural); Garrison, 759 F.3d at 1015 (holding there was no "support in the record for the ALJ's belief that physical therapy and epidural shots alleviated [plaintiff's] pain enough that her testimony regarding pain was incredible").  Plaintiff can experience some pain alleviation from an epidural and still have severe pain and unchanged physical limitations.

The ALJ also discredited plaintiff's testimony because he took over-the-counter pain medicine, or no medicine at all, rather than taking prescription medicine for pain. But the ALJ cannot discredit plaintiff because of his refusal to take a more aggressive

United States District Court
Northern District of California

1    medical remedy.  "A conservative course of treatment is not a proper basis for rejecting

2    the claimant's credibility where the claimant has a good reason for not seeking more

3    aggressive treatment."  Rawa v. Colvin, 672 F. App'x 664, 667 (9th Cir. 2016) (internal

4    quotation marks omitted); see Gambarian v. Shalala, 21 F.3d 1113 (9th Cir. 1994)

5    (holding the ALJ could not rely on plaintiff's "failure to take pain medication as a basis for

6    her negative credibility finding" because it was undisputed that plaintiff had good reasons

7    for not taking such medication).  Indeed an "individual may not agree to take prescription

8    medications because the side effects are less tolerable than the symptoms."  SSR 16-3P.

9    Here, plaintiff reported that he found opiates and other prescription pain medicine were

10   "masking the pain."  Dkt. 17-8 at 53.  He also testified that these medications made it

11   harder for him to function.  Dkt. 17-3 at 41–42.  Accordingly, his decision not to take pain

12   medicine is not inconsistent with his severity testimony.

13       The ALJ also discredited plaintiff's testimony because he could walk in the hearing

14   without the assistance of an aid and because plaintiff was able to sit during the hearing.

15   But the Ninth Circuit has stated "[t]he fact that a claimant does not exhibit physical

16   manifestations of prolonged pain at the hearing provides little, if any, support for the

17   ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of

18   constant pain are not credible."  Gambarian, 21 F.3d 1113 (internal quotation marks

19   omitted).  As the plaintiff correctly notes, his ability to sit on the stand was not

20   inconsistent with his severity testimony.  Plaintiff testified he could sit up to forty minutes

21   before losing concentration, and his court appearance does not contradict his testimony.

22   Plaintiff sat for forty-two to forty-six minutes at the hearing, but plaintiff could have been in

23   pain or could have lost concentration after forty minutes—the ALJ did not ask.  Dkt. 22 at

24   4.  Where an ALJ's other reasons for discrediting a plaintiff's testimony are not proper,

25   personal observations of a plaintiff's "function cannot form the sole basis for discrediting

26   his testimony."  Saunders v. Astrue, 433 F. App'x 531, 534 (9th Cir. 2011).

27       Finally, both parties agree that the ALJ incorrectly discredited plaintiff's testimony

28   when the ALJ concluded there was no objective evidence of severe stenosis or nerve

1   root impingement when medical records said otherwise.  Defendant, however, argues the

2   ALJ's error was harmless because the findings were inconsequential to the ALJ's

3   nondisability determination.  An "error is harmless so long as there remains substantial

4   evidence supporting the ALJ's decision and the error does not negate the validity of the

5   ALJ's ultimate conclusion."  Molina, 674 F.3d at 1115.  But the ALJ's decision suggests

6   her incorrect reading of the record influenced her determination of plaintiff's functional

7   limitations.  Specifically, the ALJ concluded plaintiff showed he experienced pain and

8   limitations but "not to the extent alleged," and cited as support the incorrect fact that there

9   was no objective evidence of severe stenosis or nerve root impairment.  Dkt. 17-3 at 20.

10  In other words, the ALJ relied on the incorrect information in discrediting plaintiff's

11  testimony and determining plaintiff's RFC.  Thus, the error was not harmless.

12          Second, the court needs to determine whether the VE's testimony based on the

13  ALJ's RFC determination constitutes substantial evidence.  Substantial evidence "is such

14  relevant evidence as a reasonable mind might accept as adequate to support a

15  conclusion."  Kawelo v. Berryhill, 732 F. App'x 584, 585 (9th Cir. 2018) (internal quotation

16  marks omitted).  "The hypothetical an ALJ poses to a vocational expert, which derives

17  from the RFC, must set out all the limitations and restrictions of the particular claimant."

18  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (internal

19  quotation marks omitted).  As explained above, the ALJ improperly discredited plaintiff's

20  severity testimony, and the ALJ did not include in plaintiff's RFC limitations that plaintiff

21  could only sit for twenty to forty minutes only if he could spend "equal or more time to

22  recover afterwards."  Dkt. 17-3 at 20.  Instead, the ALJ determined that plaintiff had the

23  RFC to "perform light work . . . except he can stand or walk 30 minutes at a time for a

24  total of 6 hours, and sit 45 minutes at a time for a total of 6 hours in an 8-hour workday."

25  Id.  Although the ALJ specified that plaintiff "would need to be able to alternate positions

26  after each of these activities," the ALJ did not state any limitation regarding plaintiff's

27  need to take frequent breaks.  Accordingly, the VE's testimony based on the ALJ's RFC

28  determination does not qualify as substantial evidence.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Third, the court must determine whether the ALJ erred in relying on the VE's testimony in concluding plaintiff could perform the functions of a "consultant." "An ALJ may take administrative notice of any reliable job information, including information provided by a VE." Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). The ALJ and VE did not misidentify plaintiff's prior work experience, as the VE acknowledged plaintiff was a labor consultant from May 1993 to May 2014. Dkt. 17-7 at 24. But the VE did cite to the "Human Resource Advisor" job description in the DOT to assess whether plaintiff could return to his work as a "consultant." Plaintiff's testimony about his prior job duties do not meet the "Human Resource Advisor" DOT job description. As a consultant, plaintiff worked with clients to draft project assessments and then worked onsite with employees to supervise and occasionally participate in the physical labor associated with the job. Dkt. 17-3 at 53. The Human Resource Advisor position, in contrast, concerns resolving interpersonal problems in the workplace. Dkt. 20 at 53. Accordingly, the ALJ erred in relying on the VE's testimony based on the "Human Resource Advisor" DOT description.

Fourth, the court must determine whether the ALJ erred in relying on the VE's testimony because the VE concluded plaintiff's prior job was not a composite job. This issue is largely moot given the above analysis. To determine whether a plaintiff's prior work is a composite job, the prior work must have "significant elements of two or more occupations and [thus] no counterpart in the DOT." Lepage v. Berryhill, No. 2:14-CV-424-EFB, 2017 WL 4539272, at *2 (E.D. Cal. Oct. 11, 2017). Here, the ALJ relied on a job description that fit no elements of plaintiff's prior work, including the job title. Accordingly, the VE and ALJ need to reassess whether plaintiff's prior work has a DOT equivalent job description or whether plaintiff's prior work constitutes a composite job.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED in part and DENIED in part, and defendant's cross-motion for summary judgment is DENIED. The court REMANDS this action to the ALJ for further proceedings in

accordance with this order.  This order adjudicates all pending motions and closes this case.

**IT IS SO ORDERED.**

Dated: March 14, 2022

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge